535 S.E.2d 205

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Jerry Steen SAPP, Jr., Defendant Below, Appellant.**

No. 26899.

Supreme Court of
Appeals of West Virginia.

Submitted May 23, 2000.

Decided July 12, 2000.

Melvin C. Snyder, III, Esq., Prosecuting Attorney, Kingwood, West Virginia, Attorney for the Appellee.

James F. Cain, Esq., Elkins, West Virginia and Trudy H. Goff, Esq., Everhart, Brown & Snyder, Kingwood, West Virginia, Attorneys for the Appellant.

PER CURIAM:

The defendant, Jerry Sapp, Jr., appeals the April 9, 1999 order of the Circuit Court of Preston County, West Virginia, which denied his motion for a new trial. The defendant was convicted by jury trial of first degree murder with a recommendation of mercy for the death of Randy Nestor. On appeal, the defendant assigns numerous errors. After thoroughly reviewing the briefs and the record submitted on appeal, we find the circuit court committed no reversible error.

## I.

## FACTS

Fortney's Mill is a camping and recreation spot located in Preston County, West Virginia. For many years residents of Preston County have gone to Fortney's Mill to swim under the bridge of Three Fork Creek; unfortunately, in recent years, Fortney's Mill has developed a bad reputation for criminal activity. On July 8, 1995, several people were enjoying the recreation at Fortney's Mill. One group which consisted of Randy Nestor, his wife, Patty Nestor, and a friend,

Carolyn Constance Hunt, came from Akron, Ohio, to celebrate the Fourth of July weekend. A group of local people including the defendant, Mark Hodgkins, Brian White, Sheila Costello, and David Bell gathered at Fortney's Mill that weekend to party and have a good time.

The evidence adduced at trial indicated that during the course of the day, the defendant along with Sheila Costello, Mark Hodgkins, and Brian White bought some acid from Patty Nestor. Upon trying the acid, they discovered it had no effect on them. This made the defendant unhappy, and, as the day and evening grew longer, he became increasingly angrier. After dark, the defendant's group ended up partying with Randy Nestor's group around their campfire. The entire group was drinking beer and using drugs, especially marijuana. The defendant finally became so angry that he decided to do something about the bad acid he had purchased earlier. He picked up a piece of firewood and walked over to Randy Nestor as he sat on the ground and struck him twice with great force and violence on top of the head. People scattered and most eyewitnesses immediately left the area. When confronted by police, most refused to talk and later admitted that when they did talk, they did not tell the truth.

Randy Nestor suffered massive brain injuries as a result of the attack. Patty Nestor and Carolyn Hunt transported him by private vehicle to the emergency room at Grafton City Hospital. From there he was transported by helicopter to Ruby Memorial Hospital in Morgantown, West Virginia, where surgery was performed to relieve the pressure on his brain. Randy Nestor died six days later. The immediate cause of death recorded on the death certificate is "[b]lunt force craniocerebral traumatic injuries[.]"

The defendant was charged with murder by criminal complaint in magistrate court and arrested on October 17, 1997. He was indicted on October 22, 1997 and arraigned on October 24, 1997. After the State and the defense requested and were granted continuances, the defendant's trial commenced on February 8 and ended on February 11, 1999

with a conviction of first degree murder with a recommendation of mercy. On April 1, 1999, the defendant was sentenced according to the jury verdict. The defendant filed a motion for a new trial which was denied by the circuit court on April 9, 1999. The defendant appeals from this order.

## II.

### DISCUSSION

On appeal, the defendant assigns several errors. He contends the circuit court erred by failing to notice plain error because the State did not prove by direct evidence that the crime occurred in Preston County as alleged in the indictment, and, as a result, venue was not proven; by admitting photographs taken during the autopsy without a preliminary finding regarding gruesomeness; by allowing other crimes committed by the defendant to be admitted into evidence; by allowing an insufficient jury panel to be drawn; by failing to include instructions regarding voluntary manslaughter and involuntary manslaughter in the jury charge; and by not instructing the jury regarding the defendant's state of intoxication at the time the crime was committed. The defendant also contends he was prejudiced because his character was attacked by the State in violation of his right to a fair trial; the special prosecutor expressed his personal opinion as to the credibility and the guilt or innocence of the defendant; and by stale prosecution. The State contends the circuit court committed no reversible error. We agree.

The defendant contends the State failed to prove the crime occurred in Preston County. We simply find no merit in this argument. Venue was proven by the State. At trial, Deputy Joseph Stiles, an investigator for the Preston County Sheriff's Office, was specifically questioned regarding the location of Fortney's Mill. He answered, "It is in the southwestern corner of Preston County. It is somewhat northwest of Newburg and Independence, and it basically lies just shy of three-tenths of a mile east of the Preston County–Taylor County line, but in Preston County." State's Exhibit 25, a map which shows the location of Fortney's Mill in Pres-

ton County was admitted into evidence with the defense stating, "There is no objection." When asked to explain the map, Deputy Stiles stated, "It is a map that I prepared that shows Fortney's Mill in relation to its location in southern Preston County. It also has four aerial photographs that I took showing the Fortney's Mill area." While explaining the aerial photographs, Deputy Stiles identified the campsites which are located in the area where the murder took place.

Furthermore, during cross-examination, the defendant himself was questioned regarding the location of Fortney's Mill. The prosecutor asked, "There is no argument, is there, that where this happened at Fortney's Mill is in Preston County, right?" The defendant answered, "True." He was asked if that is in West Virginia, to which he also answered, "True." There is no question the murder occurred at Fortney's Mill, and it was conclusively proven at trial that Fortney's Mill is located in Preston County, West Virginia.

The defendant argues the verdict in this case is clearly wrong because it is contrary to the law and the evidence. In his brief he simply concludes that "the evidence in general was insufficient on which to base a verdict of guilty of murder in the first degree." He draws this conclusion based on the fact that the witnesses and the defendant were in various stages of intoxication when the victim was murdered which resulted in inconsistencies as to the details of the murder when these witnesses testified at trial. He points to no specific inconsistencies and does not tell us how or why the evidence is insufficient. Instead, he concluded this point in his brief by reminding us that we "will reverse the judgment below if it is based upon incorrect conclusions of law."

■ Regarding challenges to the sufficiency of evidence to support a jury verdict, this Court has said:

"The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syllabus Point 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syllabus Point 1, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996). Also,

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syllabus Point 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

■ In the case *sub judice*, four eyewitnesses testified at trial that the defendant attacked the victim with a piece of firewood at Fortney's Mill. When questioned regarding the events of that fateful night, David Bell stated, "I saw Jerry Sapp hit Matthew Nestor [sic] with a piece of wood." Upon further questioning, the witness answered, "Well, I remember Jerry Sapp, I don't know if he was sitting around the campfire or not. He came from somewhere, I don't know, but he came and walked up to Randy Nestor and said the acid, not using his exact words, but in effect the acid you sold us was bad." David Bell continued by stating, "I don't know if he pulled a log out of the campfire or beside of it, but he pulled it and he hit Mr. Nestor. Mr. Nestor was sitting with his legs

crossed. He hit Mr. Nestor down on the top of the head face area here."

When asked to describe how the attack happened, another eyewitness, Sheila Costello, answered as follows:

> "Mark and I—we heard a thud so we look over and Jerry—well, Randy was—we saw him shake his head and we seen Jerry lift up his like club, like a thick log branch, I don't know, and he hits the guy and the guy falls backwards and Randy's wife runs over toward Jerry and Jerry hits her with it and then she backs off and me and Mark run over to try to help the guy and Mark rips the guy's shirt off and tries to wipe the blood off, and I was holding him up and then I told the guy, Randy's wife, that we needed to get an ambulance for him and she refused to because she had drugs on her and then it seemed like five minutes after that we took off."

When asked if anything unusual happened as he was sitting around the campfire drinking beer and smoking dope, another witness, Brian White, replied, "I reckon [Jerry] was still mad about the bad acid, picked up a log out of the fire, hit Randy in the head and then things just turned pretty hectic from that point on." Upon further questioning, he added, "[Jerry] [h]it Randy in the head.... Just picked the stick up and hit right across the top of the head with it ."

Carolyn Constance Hunt testified in the following manner:

> A. After we were sitting around for a while all of a sudden Randy was getting hit over the head.
>
> Q. Tell me how that happened.
>
> A. Just out of nowhere this man appeared and Randy was sitting to my left and we were talking and all of a sudden I looked up and there he was.
>
> Q. There who was?
>
> A. Jerry.
>
> Q. Had you seen this person before?
>
> A. I thought I had met him earlier at the campsite.
>
> Q. Do you know him by anything besides Jerry?
>
> A. Jerry Sapp. No.

Ms. Hunt continued to testify by demonstrating the defendant's stance during the attack. She testified that the defendant hit the victim twice with a log.

The defendant, while testifying on his own behalf, presented the only evidence which contradicted the testimony of these four witnesses. He testified that he drank beer and smoked marijuana on the day in question, but he used no acid. He admitted that he did go over to the Nesters' campsite. He continued testifying by stating that Brian White bought some acid from the Nesters and he was complaining around the campfire that it was no good. He presented his defense by stating, "I saw Brian grab the log from the fire and took it in a batting situation and smacked Randy." The following dialogue then took place between the defendant and defense counsel:

> Q. Okay. I want you in the best detail that you can remember tell this jury what it is that happened, what it is that you saw.
>
> A. When Randy got struck?
>
> Q. Yes.
>
> A. I saw Brian White grab the stick out of the fire and smack Randy.
>
> Q. How many times did he smack him?
>
> A. I only seen once.
>
> Q. Okay. When that happened, what did you do?
>
> A. I just kind of, you know, I'm not that kind of a, you know, I have never been that kind of a person and, you know, that's unbelievable to see somebody up and smack somebody over the head like that. But Brian did smack Randy.

In Syllabus Point 2 of *State v. La-Rock*, 196 W.Va. 294, 470 S.E.2d 613 (1996), this Court gave the following guidance:

> When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are

plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

In the case at bar, the jury obviously believed the State's witnesses over the defendant's testimony. When viewed in the light most favorable to the prosecution, there is no doubt the record contains evidence from which a jury could justifiably find the defendant guilty beyond a reasonable doubt.

■ The defendant alleges autopsy photographs should not have been admitted into evidence without a preliminary finding by the court regarding whether they were gruesome. Upon reviewing the record, we find that only one photograph of the victim was admitted into evidence. It is a photograph of the laceration to the victim's head which was taken before the autopsy was performed. The wound had been cleaned and the photograph showed no blood, gore, or contorted facial expressions. The medical examiner testified at trial that "[i]t shows the laceration, its healing, and it shows the healing surgical incision that was made by the neurosurgeons and part of their treatment shows the beginnings of that and it's got our case number on a scale in it to identify it." Defense counsel specifically stated, "Your Honor, there is no objection to its admission."

■ It is well settled that " ' " [t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' Syllabus Point 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958)." Syl. pt. 2, *Duquesne Light Co. v. State Tax Dept.*, 174 W.Va. 506, 327 S.E.2d 683 (1984), *cert. denied*, 471 U.S. 1029, 105 S.Ct. 2040, 85 L.Ed.2d 322 (1985).' Syl. pt. 2, *Crain v. Lightner*, 178 W.Va. 765, 364 S.E.2d 778 (1987)." Syllabus Point 7, *State v. Garrett*, 195 W.Va. 630, 466 S.E.2d 481 (1995). Regarding unpreserved errors, this Court further stated:

An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Syllabus Point 7, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996). Not only was this issue not raised in the lower court, it was expressly approved. Apart from that fact, the photograph was not admitted to inflame the jury but to show the nature of the wound. Admission of the photograph did not skew the fundamental fairness of the trial proceedings, and, accordingly, we find the circuit court committed no error.

■ The defendant alleges the circuit court allowed evidence of other crimes to be admitted, thereby improperly attacking his character. He refers here to the testimony regarding his illegal use of drugs. The record contains no objection to any of the testimony that he now finds objectionable. Once again, this Court will not pass on a nonjurisdictional question in the first instance. Furthermore, the court gave a cautionary or limiting instruction to the jury regarding the appellant's possession and use of drugs. The jury was cautioned that the alleged possession of drugs was not admitted as proof of guilt but solely for the limited purpose of motive or intent. Defense counsel asked that the cautionary instruction remain in the jury charge and stated there was no objection to the instruction. We find no error.

■ The defendant alleges an insufficient jury panel was drawn denying him due process and equal protection. He states that thirty-two jurors were called, and after the court excused several potential jurors, the number was down to twenty-three from which a panel of twenty was drawn. He makes no legal argument on this issue. He simply concludes that his case demanded "a far larger panel of jurors ... due to the seriousness of the charge" and failure to provide a larger panel denied him due process and equal protection. The record shows that the defendant fully used his six peremptory strikes from the panel of twenty pri-

mary jurors and one peremptory strike from the four alternate jurors. He made no objection at trial to the jury panel or the jury selection process. We find no legal or factual merit in this argument.

■ The defendant alleges the circuit court erred by allowing the special prosecutor to express his personal opinion as to the credibility of the defendant as a witness and as to his guilt or innocence. The remarks the defendant finds offensive were made during the State's closing argument. The prosecutor stated:

> Ladies and gentlemen, Randy Nestor didn't deserve to die. Randy Nestor was the victim of someone's fury unleashed upon him, and no matter what we think of Randy Nestor and the company that he was keeping and the place where he was, everybody in this courtroom including the defendant can agree he didn't deserve to die.

There was no objection to these remarks at trial. However, the defendant now contends the prosecutor rendered his opinion as to an important element and the better practice would have been for the prosecutor to state the evidence disclosed the victim did not deserve to die. He also complains that the prosecutor commented upon his demeanor while on the stand. Actually, the record reveals that the prosecutor asked the jury to compare the demeanor of Brian White with that of the defendant while each was testifying.

■ This Court has "[c]ustomarily ... refused to consider objectionable remarks in a closing argument unless an objection has been made[.]" *State v. Grubbs*, 178 W.Va. 811, 818, 364 S.E.2d 824, 831 (1987). Nonetheless, " '[i]t is improper for a prosecutor in this State to "[a]ssert his personal opinion as to the justness of a cause, as to the credibility of a witness ... or as to the guilt or innocence of the accused...." ABA Code DR7–106(C)(4) in part.' Syllabus Point 3, *State v. Critzer*, 167 W.Va. 655, 280 S.E.2d 288 (1981)." Syllabus Point 3, *State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987). In the case at bar, the prosecutor was not stating his personal opinion but was instead making a statement of the evidence

that had been presented at trial. Clearly, the defendant was not prejudiced by these remarks.

■ The defendant alleges he was prejudiced by stale prosecution because the offense occurred in 1995 but he was not indicted until 1997 or brought to trial until 1999. We find no objection below to stale prosecution. Neither can we determine how the defendant might have been prejudiced by the lapse in time prior to indictment and trial. During the trial, Deputy Stiles testified that even though the defendant was quickly identified as a suspect, the crime was not quickly solved. The investigation team had a difficult time determining who was present at the site when the murder took place. People who were interviewed about the murder did not readily tell the truth or were unwilling to talk.

Moreover, at a pre-trial conference held on September 11, 1998, the prosecutor asked for a continuance to which defense counsel specifically stated he had no objection. Defense counsel further explained that, like the State, he needed to look for a couple more witnesses, and then, upon questioning by the court, made a motion for a continuance. At another pre-trial hearing, held on November 30, 1998, defense counsel requested yet another continuance based upon "newly discovered evidence." During post-trial motions, defense counsel acknowledged the trial was continued upon the defendant's request because a new witness turned up. The defendant cannot move for continuances prior to trial and then, on appeal, complain because his trial was continued.

■ The defendant alleges the trial court erred in charging the jury on first degree murder and second degree murder while excluding an instruction on voluntary manslaughter and involuntary manslaughter. He believes evidence was presented from which the jury could have found heat of passion or that he was so intoxicated that he lacked the requisite intent to commit murder. The record does not support such a conclusion.

■ The defendant's defense at trial was that he did not murder Randy Nestor but

that Brian White did. A careful reading of the record shows that no evidence was presented at trial upon which the jury could find an unintentional taking of the life of another while engaging in an unlawful act nor was evidence presented to show the unlawful doing of a lawful act. *See* Syllabus Point 7, *State v. Barker*, 128 W.Va. 744, 38 S.E.2d 346 (1946). ("The offense of involuntary manslaughter is committed when a person, while engaged in an unlawful act, unintentionally causes the death of another, or where a person engaged in a lawful act, unlawfully causes the death of another.") An instruction on involuntary manslaughter was, therefore, not warranted. Neither did the defendant present evidence of "sudden, intentional killing upon gross provocation and in the heat of passion." *State v. McGuire*, 200 W.Va. 823, 833, 490 S.E.2d 912, 922 (1997) (quoting *State v. Beegle*, 188 W.Va. 681, 685, 425 S.E.2d 823, 827 (1992)). The defendant does not claim he was suddenly provoked by something Randy Nestor said or did; he claims he did not kill him, Brian White did. Based upon this evidence, an instruction on voluntary manslaughter was not warranted. When there is no evidence to support giving a particular instruction the trial court is not obligated to give that instruction. This Court has specifically stated that "[i]nstructions that are repetitious or are not supported by the evidence should not be given to the jury by the trial court." Syllabus Point 7, *State v. Cokeley*, 159 W.Va. 664, 226 S.E.2d 40 (1976).

Moreover, prior to charging the jury, the court discussed with the prosecutor and defense counsel whether to give an instruction on provocation. The judge concluded that "it is the defendant's position through his testimony that there was no provocation." Defense counsel agreed and stated there was no objection to the court striking the paragraph on provocation. The court also asked if there was an objection to removing the instruction on voluntary intoxication because of the defendant's testimony that he had a beer buzz but was not "so intoxicated that he didn't see Brian White hit Randy Nestor." Defense counsel responded, "That's fine, Your Honor. That is the testimony." [1] If the court had forced such an instruction upon the defendant, it would have undermined his credibility and impaired his defense.

Finally, the court asked if "either the state or the defendant" would like to include any other instructions which had been submitted to the court but had been left out of the charge. The State had no objection to the charge and defense counsel stated, "[T]here is nothing further to be added to the instructions by the defendant." Defense counsel specifically stated, "There are no objections to the court's proposed charge."

This Court previously stated:

"Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. The trial court, therefore, has broad discretion in formulating its charge to the jury, so long as it accurately reflects the law. Deference is given to the circuit court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed for an abuse of discretion." Syl. Pt. 15, *State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995).

---

1. Upon reviewing the record, we find the defendant did not request an instruction on intoxication. In fact, the trial judge was originally prepared to give an instruction on intoxication as it relates to intent but removed the instruction based on the defendant's testimony. Defense counsel agreed. The record reveals the following conversation took place:

> THE COURT: Now, on Page 16 and 17 is a voluntary drunkenness and intoxication instruction. I had drafted this out before I heard all of the evidence. It is the court's inclination to take that out because of Mr. Sapp's testimony that he had a—I think he used the word beer buzz but I could be wrong, but that he wasn't so intoxicated that he didn't see Brian White hit Randy Nestor.
>
> MR. SIGWART: That's fine, Your Honor. That is the testimony.
>
> MR. SNYDER: The state would agree that the facts don't seem to support that instruction.
>
> THE COURT: So I would take out the voluntary drunkenness instruction[.]

**616**

Syllabus Point 1, *State v. McGuire*, 200 W.Va. 823, 490 S.E.2d 912 (1997). Given the circumstances discussed above, we believe the circuit court did not abuse its discretion in instructing the jury in this case. The defendant was given every opportunity to object to the charge or to offer additional instructions and failed to do so. Not only did he not object or fail to offer additional instructions, he expressly agreed that the charge was proper. The members of the jury were sufficiently instructed on the issues and were not misled by the law.

### III.

### CONCLUSION

We have thoroughly reviewed each of the defendant's assignments of error and find the circuit court committed no reversible error. For the foregoing reasons, the final order of the Circuit Court of Preston County is affirmed.

Affirmed.