619 S.E.2d 116

STATE of West Virginia, Plaintiff Below, Appellee,

v.

Harry David LEONARD, Defendant Below, Appellant.

No. 31857.

Supreme Court of Appeals of West Virginia.

Submitted: April 5, 2005.

Filed: June 22, 2005.

Eric J. Holmes, Esq., Kevin C. Harris, Esq., Law Offices of Harris & Holmes, PLLC, Ripley, for the Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Robert D. Goldberg, Esq., Assistant Attorney General, Charleston, for the Appellee.

The Opinion of the Court was delivered PER CURIAM.

Chief Justice ALBRIGHT dissents and reserves the right to file a dissenting opinion.

Justice STARCHER concurs, in part, and dissents, in part, and reserves the right to file an opinion concurring, in part, and dissenting, in part.

Justice MAYNARD concurs and reserves the right to file a concurring opinion.

PER CURIAM.

This case is before this Court upon the appeal of Harry David Leonard from his conviction, by a jury, in the Circuit Court of Jackson County, West Virginia, of murder of the first degree with no recommendation of mercy. The conviction arose from the charge that the appellant strangled his 78 year old mother in her home in Millwood, West Virginia. Pursuant to an order entered on June 18, 2003, the Circuit Court denied the appellant's motions for an acquittal and for a new trial. On October 3, 2003, the Circuit Court granted the appellant's motion to extend the time for filing an appeal to this Court. The appellant is currently incarcerated at the Mount Olive Correctional Complex in Mount Olive, West Virginia.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. One of the assignments of error raised by the appellant concerns whether the Circuit Court committed error in not giving an instruction to the jury on voluntary manslaughter and in not including that option upon the verdict form. That assignment was of particular interest during the oral argument before this Court. Upon a thorough review, this Court concludes that the Circuit Court did not commit error in that regard. Nor does this Court find merit in the appellant's remaining assignments of error. Accordingly, the June 18, 2003, order of the Circuit Court denying the motions for an acquittal and for a new trial is affirmed.

I.

Factual Background

In February 2002, the appellant, Harry David Leonard, age 54, was living with his mother, Geneva H. Leonard, a 78 year old widow, in her home in Millwood. The appellant, the father of an adult son from an earlier marriage, was unemployed. The appellant and Ms. Leonard, however, had not been getting along. Ms. Leonard frequently complained to the appellant about his unemployment and about his smoking and drinking in the home, and she often eavesdropped on his telephone conversations. According to the evidence of the State, the appellant told others prior to Ms. Leonard's death that he wanted to kill her and then commit suicide.[1]

On February 26, 2002, at 12:43 p.m., the appellant placed a call from his mother's home to Anita Jo Butcher. Ms. Butcher, a married woman, had been having a sexual affair with the appellant. During the call, which lasted approximately 8 minutes, Butcher and the appellant became aware that Ms. Leonard was eavesdropping from another telephone located on an upper floor of the residence. Butcher heard the appellant shout at Ms. Leonard to get off the telephone. Soon after, Butcher heard the follow-

---

1. During the trial, the State called David Elkins and Cheryl Hysell who were social companions of the appellant. Elkins testified that the appellant wanted to kill his mother because she criticized him for smoking and drinking in the home and because she eavesdropped on his telephone conversations. Hysell testified that the appellant said that he had a plan to kill his mother and then kill himself.

ing: (1) a click, suggesting that one of the telephones had been hung up, (2) Ms. Leonard stating, "He's tearing the house down," (3) a rumbling sound and (4) Ms. Leonard stating, "Oh, my Lord," at which point the call was terminated.[2] Alarmed by what she heard, Ms. Butcher telephoned her friend, Cheryl Hysell, and asked Hysell to call the police. In the meantime, Butcher made repeated attempts to call the Leonard home. Finally, according to Butcher, the appellant answered and said, "It's done" and hung up the phone.[3]

At 2:00 p.m., two officers from the Jackson County Sheriff's Department arrived at the Leonard home. Upon getting no response at the front door, the officers noticed that an automobile was in the adjoining garage with the motor running. The officers forced their way into the garage and discovered the appellant lying under the automobile with a plastic bag over his head and over the exhaust pipe. The appellant was pulled away and secured by one officer while the other entered the home. The latter officer discov-

ered Ms. Leonard lying across the doorway of her bedroom on the upper floor of the residence. She was unresponsive. Soon after, a paramedic team arrived at the scene and, upon consulting with a physician by telephone, pronounced Ms. Leonard dead. The State Medical Examiner subsequently determined that Ms. Leonard died from manual strangulation.

## II.

### Procedural Background

In June 2002, a Jackson County grand jury indicted the appellant for the murder of Geneva Leonard. *W.Va.Code*, 61–2–1 (1991). Trial began on March 17, 2003. The State asserted that the appellant, who had argued with Ms. Leonard the night before the homicide, reacted to the eavesdropping during his conversation with Ms. Butcher by hanging up the telephone in the room where he was talking, going up the steps to the bedroom area, killing Ms. Leonard and attempting to commit suicide, all of which he had previously indicated to others he was going to do.[4]

---

2. At trial, Anita Jo Butcher testified as follows:
   Q. What did [the appellant] say when he told her to get off the phone?
   A. He told her to get off the f'ing phone and it was a private conversation. She said she was probably paying for it and he told her no she wasn't and she said there was something she wanted to tell me the truth about David and—
   Q. Once she told you on the phone she wanted to tell you the truth about David, what happened next?
   A. There was a click.
   Q. There was a click. Did you hear David Leonard's voice any more after that click?
   A. No.
   .Q. What did you hear after this clicking sound?
   A. His mother asked me if I heard that and I said yes and she said oh my God, he's tearing the house down and there was like a rumbling sound there then she just said oh my Lord and she's gone, that's the last I heard of her.

3. Anita Jo Butcher testified at trial as follows:
   Q. So you hung [up] the phone with Ms. Hysell. Did you do anything else before you started trying to call Geneva Leonard's house or did you immediately start doing that?
   A. I just kept calling back.
   *   *   *   *   *   *
   Q. When a person answered at Geneva Leonard's house, was anything said by that person?
   A. Yes, that it was done, it's done.

Q. Was it a male voice or a female voice?
A. Male.
Q. Do you know who the voice belonged to?
A. David.

4. In addition to the testimony of David Elkins and Cheryl Hysell described above concerning the appellant's prior comments about killing Ms. Leonard and committing suicide, the Circuit Court admitted in evidence the contents of a letter found by the police on a computer screen at the Leonard residence. The letter, apparently written by the appellant to Anita Jo Butcher, stated in part:

> The bitch from hell is up. * * * Now is the time for me to pack a bag and walk out into the rain. Get out, get out now. So what do you think Jo? What do you think I will do when confronted by the ultimate evil? Tie a rope around the chimney and bow out gracefully over the edge of the roof. If one has to go, shouldn't one try to make the world a better place?

The appellant, on the other hand, asserted that he had no memory of the time between hanging up during his call to Butcher and the arrival of the two officers who found him in the garage. Thus, according to the appellant, he was attacked by an intruder in the home who also killed Ms. Leonard. In support of that assertion, the appellant argued that Ms. Leonard made a telephone call to Ms. Butcher's mother, Anna Cain, at 1:58 p.m. on the day in question, thereby demonstrating, contrary to the theory of the State, that Ms. Leonard was not killed during the 8 minute, 12:43 p.m. call between the appellant and Butcher.

At the conclusion of the trial, the Circuit Court instructed the jury that they could return one of the following verdicts: (1) guilty of murder of the first degree with no recommendation of mercy, (2) guilty of murder of the first degree with a recommendation of mercy, (3) guilty of murder of the second degree or (4) not guilty. The jury found the appellant guilty of murder of the first degree with no recommendation of mercy.[5] Accordingly, the Circuit Court sentenced the appellant to the penitentiary for life with no possibility of parole. Pursuant to the order of June 18, 2003, the appellant's motions for an acquittal and for a new trial were denied.

## III.

### Discussion

■ As stated above, the appellant contends that the Circuit Court committed error in not giving an instruction to the jury on voluntary manslaughter and in not including that option upon the verdict form. With regard to instructing the jury, the general standard of review, as set forth in Vol. 2, F.D. Cleckley, *Handbook on West Virginia Criminal Procedure* 2d, p. 216 (Michie—1993), is that jury instructions are reviewed to determine if they are supported by the

evidence and are a correct statement of the law. Accordingly, this Court has indicated that, while the giving or refusing of a particular instruction is subject to an abuse of discretion standard, the question of whether the jury was thus properly instructed "is a question of law, and the review is *de novo.*" Syl. pt. 1, *State v. Brooks,* 214 W.Va. 562, 591 S.E.2d 120 (2003); syl. pt. 2, *State v. Blankenship,* 208 W.Va. 612, 542 S.E.2d 433 (2000).

According to the appellant, the justification for an instruction on voluntary manslaughter was provided by the testimony of Anita Jo Butcher who indicated to the jury that, during the 12:43 p.m. telephone call, the appellant became enraged upon discovering that his mother was eavesdropping and that, immediately thereafter, Butcher heard sounds leading her to conclude that the police should be notified. That assignment of error, however, is deprived of significance in view of the appellant's assertion during the trial that Ms. Leonard was killed by an intruder in the home. Moreover, as discussed below, the appellant told the Circuit Court that he did not want the jury to be instructed on voluntary manslaughter.

At the close of the evidence at trial, counsel for the appellant informed the Circuit Court that the appellant declined the inclusion in the charge of an instruction on voluntary manslaughter and, instead, wanted the jury to be instructed solely upon murder of the first degree and not guilty. Inasmuch as that request was against the advice of counsel, the Circuit Court explained the elements of murder of the first degree, murder of the second degree and voluntary manslaughter to the appellant and provided him with an opportunity to again confer with counsel. Upon so conferring, however, the appellant did not change his position. Thereafter, at the State's request, the Circuit Court added the option of murder of the second degree. In doing so, the Circuit Court made the

---

**5.** It should be noted that immediately before the Circuit Court instructed the jury, the appellant moved to bifurcate the jury's deliberation upon the issue of mercy from all other matters under their consideration. The State objected upon the ground that the appellant could have filed a motion to bifurcate prior to trial but failed to do so. Moreover, the State asserted that bifurcation

was not warranted because the members of the jury had already been informed during voir dire that, if they found the appellant guilty of murder of the first degree, they would have the responsibility of deliberating upon the mercy issue. The Circuit Court agreed with the State and denied the motion. The appellant did not assign that ruling as error in this appeal.

following comment: "The Court finds that there is no evidence that would support a jury verdict on voluntary manslaughter [.]" Thus, the jury was instructed that they could return one of the following verdicts: (1) guilty of murder of the first degree with no recommendation of mercy, (2) guilty of murder of the first degree with a recommendation of mercy, (3) guilty of murder of the second degree or (4) not guilty.

In *State v. Sapp,* 207 W.Va. 606, 535 S.E.2d 205, *cert. denied,* 531 U.S. 1020, 121 S.Ct. 585, 148 L.Ed.2d 501 (2000), the defendant was convicted of murder of the first degree arising from an incident wherein the defendant, angered over the ineffectiveness of an illegal drug, unexpectedly struck the victim, Randy Nestor, with a blunt object. Upon appeal, the defendant asserted that the trial court committed error in failing to instruct the jury on voluntary manslaughter. This Court rejected that assertion because the evidence did not warrant such an instruction and because the defendant had agreed, at trial, to strike an instruction on "provocation" from the charge to the jury.[6] As the opinion in *Sapp* observed:

> The defendant does not claim he was suddenly provoked by something Randy Nestor said or did; he claims he did not kill him, Brian White did. Based upon this evidence, an instruction on voluntary manslaughter was not warranted. * * *

> Moreover, prior to charging the jury, the court discussed with the prosecutor and defense counsel whether to give an instruction on provocation. The judge concluded that "it is the defendant's position through his testimony that there was no provocation." Defense counsel agreed and stated there was no objection to the court striking the paragraph on provocation. * * *

> Given the circumstances discussed above, we believe the circuit court did not abuse its discretion in instructing the jury in this case. The defendant was given

every opportunity to object to the charge or to offer additional instructions and failed to do so.

207 W.Va. at 615, 616, 535 S.E.2d at 214, 215. *See also, State v. Tidwell,* 215 W.Va. 280, 283, 599 S.E.2d 703, 706 (2004), citing *State v. Boyd,* 209 W.Va. 90, 543 S.E.2d 647 (2000), to the effect that, if the defendant requested the charge, he cannot "complain of the result."

■ Similarly, the case now to be determined not only involves the rejection of a voluntary manslaughter instruction at trial but also circumstances wherein the evidence would not support a voluntary manslaughter verdict. Syllabus point 5 of *State v. Demastus,* 165 W.Va. 572, 270 S.E.2d 649 (1980), holds: "Jury instructions on possible guilty verdicts must only include those crimes for which substantial evidence has been presented upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt." Moreover, as this Court stated in syllabus point 1 of *State v. Jones,* 174 W.Va. 700, 329 S.E.2d 65 (1985):

> The question of whether a defendant is entitled to an instruction on a lesser included offense involves a two-part inquiry. The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. The second inquiry is a factual one which involves a determination by the trial court of whether there is evidence which would tend to prove such lesser included offense. *State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982).

Syl. pt. 12, *State v. McCraine,* 214 W.Va. 188, 588 S.E.2d 177 (2003); syl. pt. 9, *State v. Carey,* 210 W.Va. 651, 558 S.E.2d 650 (2001); syl. pt. 4, *State v. Blankenship,* 208 W.Va. 612, 542 S.E.2d 433 (2000). Thus, syllabus point 4 of *State v. Collins,* 154 W.Va. 771, 180 S.E.2d 54 (1971), holds: "Instructions must be based upon the evidence and an instruction which is not supported by evidence

---

**6.** Notwithstanding the reference in *Sapp* to "provocation," syllabus point 3 of *State v. McGuire,* 200 W.Va. 823, 490 S.E.2d 912 (1997), holds: "Gross provocation and heat of passion are not essential elements of voluntary manslaughter, and, therefore, they need not be prov-

en by evidence beyond a reasonable doubt. It is intent without malice, not heat of passion, which is the distinguishing feature of voluntary manslaughter." *State v. Boxley,* 201 W.Va. 292, 300, 496 S.E.2d 242, 250 (1997), *cert. denied,* 525 U.S. 863, 119 S.Ct. 151, 142 L.Ed.2d 123 (1998).

should not be given." Syl. pt. 5, *State v. Brooks*, 214 W.Va. 562, 591 S.E.2d 120 (2003).

In *State v. Smith*, 198 W.Va. 441, 481 S.E.2d 747 (1996), the defendant, Patricia Lynn Smith, was convicted of murder of the second degree and conspiracy relating to the shooting death of her live-in boyfriend. Although the relationship between the decedent and Smith was described as "tempestuous," Smith conceded that the evidence did not meet the criteria of battered woman syndrome. Nevertheless, the record contained substantial testimony of mutual arguing, shouting, threatening and the use of profanity. 198 W.Va. at 443, 481 S.E.2d at 749. The appellant, with the assistance of her 16 year-old son, shot the decedent while he was sleeping. This Court, in *Smith*, held that the Circuit Court did not abuse its discretion in refusing to instruct the jury on voluntary manslaughter. *See*, syl. pt. 1, *State v. Bell*, 211 W.Va. 308, 565 S.E.2d 430 (2002), noting that the refusal to give a jury instruction is reviewed under an abuse of discretion standard.

In this case, although the evidence reveals that Ms. Leonard frequently complained to the appellant about his unemployment and about his smoking and drinking in the home and that she often eavesdropped on his telephone conversations, there is no evidence that she ever committed, or threatened to commit, physical harm to the appellant. Moreover, although he was angered at Ms. Leonard during the course of the 12:43 p.m. telephone call to Anita Jo Butcher, the appellant, according to the evidence of the State, hung up the downstairs telephone and went up a set of steps to the upper floor of the residence in order to reach the bedroom where Ms. Leonard was eavesdropping. As stated above, Ms. Leonard's body was discovered by the police lying across the doorway of her bedroom. When viewed together with the testimony of Ms. Butcher, David Elkins and Cheryl Hysell, this Court cannot say that the Circuit Court was incorrect in its assessment that there was "no evidence that would support a jury verdict on voluntary manslaughter."

That assessment, in conjunction with the appellant's assertion that the homicide was committed by an intruder, as well as his desire to have an instruction on voluntary manslaughter excluded from the charge, leads this Court to the inexorable conclusion that the Circuit Court did not commit error in not giving an instruction to the jury on voluntary manslaughter and in not including that option upon the verdict form.

## IV.

### Remaining Assignments of Error

■ In support of his assertion that his mother was killed by an intruder, the appellant argued that Ms. Leonard made a telephone call to Anita Jo Butcher's mother, Anna Cain, at 1:58 p.m. on the day in question, thereby demonstrating, contrary to the theory of the State, that Ms. Leonard was not killed during the 8 minute, 12:43 p.m. call between the appellant and Butcher. Specifically, upon returning to her home from work on February 26, 2002, Anna Cain listened to a 1:58 p.m. voice mail recording on her telephone. Although the message was garbled, Ms. Cain was of the opinion that the voice was that of Geneva Leonard, whose voice was familiar to her, and that the message was in reference to the appellant's son. However, Officers Martin and Boggs of the Jackson County Sheriff's Department listened to the voice mail repeatedly and found it to be unintelligible. Nevertheless, the officers failed to record the message and, as was shown to be commonly done, the telephone company erased the voice mail some two weeks later.

The appellant contends that the Circuit Court committed error in denying his motion to dismiss because the 1:58 p.m. voice mail was exculpatory in relation to the State's theory concerning when Ms. Leonard was killed. In addition, the appellant contends that the failure of Officers Martin and Boggs to record the message violated the State's duty to preserve evidence as addressed by this Court in *State v. Osakalumi*, 194 W.Va. 758, 461 S.E.2d 504 (1995).[7] We have previ-

---

7. Syllabus point 2 of *Osakalumi* holds:

When the State had or should have had

evidence requested by a criminal defendant but

ously held that " 'where an evidentiary hearing is conducted upon a motion to dismiss this Court's 'clearly erroneous' standard of review is ordinarily invoked concerning a circuit court's findings of fact.' " *State v. Cavallaro*, 210 W.Va. 237, 239, 557 S.E.2d 291, 293 (2001) (per curiam) (quoting State v. Davis, 205 W.Va. 569, 578, 519 S.E.2d 852, 861 (1999)).

The Circuit Court conducted a hearing upon the appellant's motion on December 3, 2002, and denied the motion at that time and again at trial. Upon a review of the record, this Court is of the opinion that, although the officers admitted that the voice mail should have been preserved, its absence during the trial was mitigated by a number of factors. First, as the circumstances suggest, the content of the message was less critical than the fact that it occurred at 1:58 p.m. Evidence that Ms. Cain received a 1:58 p.m. voice mail was placed before the jury as well as her testimony that she believed the voice was that of Geneva Leonard and that the message was in reference to the appellant's son. On the other hand, Officers Martin and Boggs testified that the message was unintelligible. In addition, Anita Jo Butler, who initially stated that the voice on the 1:58 p.m. message was Ms. Leonard's, subsequently testified that she did not believe that it was Ms. Leonard's voice.

Therefore, a significant amount of evidence concerning the existence and nature of the voice mail was placed before the jury, and this Court finds no reversible error in that regard.

■ The appellant next contends that the Circuit Court committed error: (1) in refusing to allow him to cross-examine Anita Jo Butcher regarding physical abuse allegedly committed against her by her husband and

(2) in excluding a photograph of Ms. Butcher allegedly depicting such abuse. The appellant asserts that the excluded evidence, if allowed, would have revealed that Ms. Butcher tailored her trial testimony in a manner favorable to the State because she feared further abuse by her husband who knew of her affair with the appellant. In so ruling, however, the Circuit Court indicated to the appellant that he could call Ms. Butcher in his case-in-chief upon the abuse issue. The appellant declined to do so.

Nevertheless, Ms. Butcher was permitted to tell the jury that the description of the events she gave the police concerning the homicide was somewhat influenced by the presence of her husband. As Ms. Butcher testified at trial:

Q. When you were describing the events of February 26, 2002, were your answers in any way influenced by the fact that your husband was there?

A. Some of it, yeah.

Q. What parts?

A. The sexual part.

Q. In what way was Mr. Butcher being there influencing what you said about the sexual part?

A. I just know it was going to cause me some more crap with him, you know.

Moreover, the appellant testified before the jury that his relationship with Ms. Butcher caused him "ongoing problems" with Ms. Butcher's husband and that, on one occasion, her husband physically assaulted him. In addition, the jury was told that Ms. Butcher's husband had filed telephone harassment charges against the appellant.

This court has held that "[a] trial court's evidentiary rulings, as well as its application

---

the evidence no longer exists when the defendant seeks its production, a trial court must determine (1) whether the requested material, if in the possession of the State at the time of the defendant's request for it, would have been subject to disclosure under either *West Virginia Rule of Criminal Procedure* 16 [concerning discovery and inspection] or case law; (2) whether the State had a duty to preserve the material; and (3) if the State did have a duty to preserve the material, whether the duty was

breached and what consequences should flow from the breach. In determining what consequences should flow from the State's breach of duty to preserve evidence, a trial court should consider (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction.

of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998). In view of such evidence, and of the fact that the appellant's counsel made reference to Ms. Butcher's fear of her husband during closing argument, this Court finds no abuse of discretion with regard to either the Circuit Court's ruling concerning the cross-examination of Anita Jo Butcher or its exclusion of the photograph. The appellant's assignment of error in that regard is without merit.

Finally, the appellant contends that the Circuit Court violated his constitutional right to a speedy trial by granting the State's motion to continue the trial from its scheduled date in December 2002 to March 2003.[8] The State obtained the continuance because of lateness in completing laboratory test results concerning DNA material found in the Leonard home after the homicide. The appellant asserts that, if the State had been more diligent, the delay could have been avoided.

Syllabus point 3 of *State v. Carrico*, 189 W.Va. 40, 427 S.E.2d 474 (1993), holds: "If a conviction is validly obtained within the time set forth in the three-term rule, *W.Va.Code*, 62–3–21 [1959], then that conviction is presumptively constitutional under the speedy trial provisions of the *Constitution of the United States*, Amendment VI, and *W.Va. Constitution*, Art. III, § 14." *State v. Hinchman*, 214 W.Va. 624, 630, 591 S.E.2d 182, 188 (2003).[9] In that regard, this Court has observed that the term during which the indictment was returned is not to be counted under the three-term rule in favor of discharging the defendant. Syl. pt. 4, *Carrico*, *supra*.

As set forth in Rule 2.05. of the West Virginia Trial Court Rules, the terms of the Circuit Court of Jackson County commence on the fourth Tuesday in February, June and October. In this case, the appellant was indicted in June 2002 and tried in March 2003, well within the three-term rule. A review of the record reveals that both the appellant and the State obtained continuances within that period of time. Although the appellant claims a speedy trial violation, he does not specifically address the three-term rule.

We have held that "[a] motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion." Syl. pt. 2, *State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979). No such abuse of discretion has been shown. The appellant's trial took place within the time specified by *W.Va. Code*, 62–3–21 (1959), and within the requirements set forth in *Carrico*. Therefore, this Court finds no violation of the appellant's right to a speedy trial.

## V.

### Conclusion

Upon all of the above, the June 18, 2003, order of the Circuit Court of Jackson County denying the appellant's motions for an acquittal and for a new trial is affirmed.

Affirmed

ALBRIGHT, Chief Justice, dissenting.

I dissent from the majority opinion because I believe the trial court committed reversible error by not granting defense counsel's request to instruct the jury on the

---

8. *U.S. Const.*, amend. VI, provides, in part, as follows: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." *W.Va. Const.*, art. III, § 14, provides, in part, that trials of crimes and misdemeanors shall be "without unreasonable delay [.]"

9. *W.Va.Code*, 62–3–21 (1959), provides in part:
   Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict [.]

lesser included offense of voluntary manslaughter considering the strategical change the State made during the course of the trial.

Initially, based on evidence of premeditation and deliberation, the State proceeded to present its case and seek only a conviction for first degree murder. The defendant relied on this representation in preparing his defense and in deciding to waive a jury instruction for voluntary manslaughter. When the State began to question the strength of its evidence and sought and obtained a jury instruction for the lesser included offense of second degree murder, then fairness dictates that the defendant should have been permitted to adjust to this "mid-stream" change in direction and obtain a jury instruction for voluntary manslaughter as there was evidence that the intentional killing was the result of sudden heat of passion rather than malice.

The critical distinction between murder and voluntary manslaughter is the element of malice. *State v. Kirtley,* 162 W.Va. 249, 254, 252 S.E.2d 374, 376–77 (1978) (citation omitted). Stated somewhat more descriptively, "The distinguishing feature between murder and manslaughter is that murder comes from the wickedness of the heart, and manslaughter, where voluntary, arises from the sudden heat of passion[ ]" due to gross provocation. *State v. Wilson,* 95 W.Va. 525, 531, 121 S.E. 726, 729 (1924). In *State v. McGuire,* 200 W.Va. 823, 490 S.E.2d 912 (1997), we held that "[g]ross provocation and heat of passion are not essential elements of voluntary manslaughter, ... [which would require proof] beyond a reasonable doubt. It is intent without malice, not heat of passion, which is the distinguishing feature of voluntary manslaughter." *Id.* at Syl. Pt. 3. In footnote seven of *State v. Starkey,* 161 W.Va. 517, 527, 244 S.E.2d 219, 225 (1978), we said: "It is important to note that provocation is not a defense to the crime [of voluntary manslaughter], but merely reduces the degree of culpability[.]" (Citations omitted). In other words, while an accused may not avoid conviction by using proof of heat of passion as a *complete defense,* an accused may make use of such evidence to defend against the greater crimes of first and second degree murder. In this context, evidence of provocation and

heat of passion is used by a defendant to disprove the existence of malice. This Court long ago stated that "[m]alice is of the essence of murder, and the prisoner has a right to disprove it in any legitimate manner." *State v. Evans,* 33 W.Va. 417, 424, 10 S.E. 792, 794 (1890). These words are especially relevant in the circumstances at hand where the defendant's exposure to liability was broadened due to a material change in the prosecution which the State initiated during the course of a trial.

The evidence in this case demonstrated that the defendant was incensed when he realized that his mother was eavesdropping on a phone call that he was having with a married woman with whom he was having an affair. Admittedly, eavesdropping is not generally considered a source of gross provocation. However, in circumstances where the State is permitted to change its strategy during the course of trial and in so doing obtains an increased opportunity for conviction, a defendant should be given the opportunity to develop a defense to counter that advantage. In this case, the defendant wanted to challenge the State's proof of malice with the evidence of heat of passion and he should have been afforded that opportunity. While the State had every right to have the second degree murder instruction, the defendant should not be prejudiced in his defense because the State delayed in making its intentions known. Under these circumstances, I believe that the requested voluntary manslaughter instruction should have been given and that the failure to give the instruction prejudiced the defendant.

As I believe an unfair advantage was afforded the State in this case resulting in prejudice to Appellant, I respectfully dissent.

STARCHER, J., dissenting.

Upon reviewing Justice Albright's separate opinion in dissent, I am persuaded that the defendant was entitled to a manslaughter instruction. Therefore, I join in Justice Albright's dissent, and would reverse and remand for a new trial.