# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Jerry Steen Sapp Jr.,**
**Petitioner Below, Petitioner**

**FILED**

**April 29, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 15-0258** (Preston County 01-C-06)

**David Ballard, Warden**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jerry Steen Sapp Jr., by counsel John V. Danford, appeals the February 19, 2015, order of the Circuit Court of Preston County denying his petition for habeas relief stemming from his conviction and sentence for first degree murder. Respondent David Ballard, Warden, by counsel Zachary Aaron Viglianco, filed his response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 8, 1995, several groups of people were engaged in recreational activities at Fortney's Mill, a camping and recreation spot in Preston County, West Virginia. According to testimony from several witnesses, Patty Nestor sold petitioner and his friends acid,[1] which turned out to be less effective than expected.[2] Petitioner became angry, and his anger grew throughout the day. However, Ms. Nestor's group and petitioner's group partied together around a campfire while the groups drank alcohol and used drugs. Petitioner then picked up a piece of firewood, walked over to Ms. Nestor's husband, Randy Nestor, and struck him twice in the head. Mr. Nestor sustained massive brain injuries and later died as a result of those injuries.

Two years after Mr. Nestor's death, petitioner was arrested and charged with first degree murder. At trial, four witnesses testified that petitioner was the person who attacked Mr. Nestor, and two witnesses testified that petitioner had acknowledged or claimed responsibility for the attack. However, petitioner testified on his own behalf and claimed that a member of his group, Brian White, was the one responsible. On February 11, 1999, a jury found petitioner guilty of

---

[1] Lysergic acid diethylamide is commonly referred to as "acid."

[2] Petitioner denied receiving or consuming this acid.

1

first degree murder with a recommendation of mercy. On March 18, 1999, the circuit court denied petitioner's motion for a new trial and sentenced petitioner to life imprisonment with mercy. On September 28, 1999, petitioner filed his direct appeal with this Court, asserting thirteen errors, several of which touched on the ineffective assistance of trial counsel. On July 12, 2000, this Court issued its decision affirming petitioner's conviction. *State v. Sapp*, 207 W.Va. 606, 535 S.E.2d 205 (2000).

On January 18, 2001, petitioner filed a pro se petition for writ of habeas corpus. The circuit court then appointed counsel to represent petitioner. The Circuit Court of Preston County denied that petition by order entered on or about April 10, 2009. On February 19, 2015, the circuit court entered its "Order Reissuing Order Denying Petition for Writ of Habeas Corpus" for purposes of allowing petitioner to appeal the denial of his habeas petition. Petitioner now appeals that denial.

We apply the following standard of review in habeas cases:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006). Further, "'[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed.' Syllabus Point 4 of *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 254 S.E.2d 805 (1979) [c]ert. [d]enied, 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983)." Syl. Pt. 3, *Hatcher v. McBride,* 221 W.Va. 5, 650 S.E.2d 104 (2006).

On appeal, petitioner asserts two assignments of error. The first alleged error is the circuit court's determination that petitioner did not receive ineffective assistance of trial counsel. As part of this alleged error, petitioner sets forth six subparts, though all fall squarely within the general category of ineffective assistance of counsel. The alleged ineffective assistance of counsel includes the following: trial counsel failed to move to exclude certain evidence admitted pursuant to Rule 404(b) of the West Virginia Rules of Evidence or request a cautionary instruction regarding the same; trial counsel failed to object to the State's improper impeachment of petitioner during the redirect of witness Brian White; trial counsel failed to object to the investigating officer's repeated use of the word "murder" during the officer's testimony; trial counsel failed to object to the State's improper questioning of petitioner; trial counsel failed to object to several prejudicial misrepresentations of petitioner's trial testimony by the State during closing argument; trial counsel failed to object or request a curative instruction when the State made prejudicial misstatements of law as the prosecutor attempted to define reasonable doubt to the jury during closing argument; and trial counsel failed to object to the circuit court's inclusion of a *Clifford* instruction in its jury charge.[3]

---

[3] A jury instruction given pursuant to *State v. Clifford*, 59 W.Va. 1, 52 S.E. 981 (1906), is commonly referred to as a *Clifford* instruction.

We have previously held that

> [i]n the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). Further,

> [i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pt. 6, *id.*

In the instant matter, petitioner has failed to satisfy the high burden set forth in *Miller.* Petitioner's theory of the case was that Mr. White was the one who struck Mr. Nestor. He did not contend that he was not present at the time of the crime, and he does not allege on appeal that there were witnesses his counsel failed to call that could corroborate his version of events. In addition, while petitioner complains about the *Clifford* instruction given by the circuit court, this Court has previously stated that the "linchpin of the problems that flow from these instructions is the failure adequately to inform the jury of the difference between first and second degree murder." *State v. Guthrie*, 194 W.Va. 657, 673, 461 S.E.2d 163, 179 (1995). Petitioner did not contend at trial and does not assert on appeal that he should have been found guilty of second degree murder, rather than first degree murder, as he contended that he was not the perpetrator of the crime. Therefore, while petitioner's counsel arguably could have asserted additional objections during the trial, counsels' alleged failures to object as set forth in his first assignment of error do not rise to the level of ineffective assistance of counsel required by *Miller* in order to obtain the requested relief. The same is true as to the other alleged instances of ineffective assistance of counsel during trial.

Petitioner's second assignment of error is that the circuit court erred in finding that petitioner's claims of mental incompetency at the time of the crime and at the time of trial were without merit. When petitioner submitted his amended petition for habeas relief before the circuit court, he included a *Losh* list, which included the following: mental competency at time of crime; mental competency at time of trial; incapacity to stand trial due to drug use; and claim of incompetence at the time of the offense, as opposed to time of trial.[4] Petitioner contends that neither his counsel nor the circuit court requested a mental competency or criminal responsibility

---

[4] *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981).

evaluation despite the fact that no witness testified that petitioner was sober at the time of the incident. He argues that with a diminished capacity defense, he could have been found not guilty of first degree murder due to an inability to form the requisite intent as a result of intoxication.

This Court has previously found that "'[i]ntoxication to reduce an unlawful homicide from murder in the first degree, must be such as to render the accused incapable of forming an intent to kill, or of acting with malice, premeditation or deliberation.' Syl. pt. 4, *State v. Burdette*, 135 W.Va. 312, 63 S.E.2d 69 (1950)." Syl. Pt. 3, *State v. Keeton*, 166 W.Va. 77, 272 S.E.2d 817 (1980). Further,

> [w]here there is evidence in a murder case to support the defendant's theory that his intoxication at the time of the crime was such that he was unable to formulate the requisite intent to kill, it is error for the trial court to refuse to give a proper instruction presenting such a theory when requested to do so.

Syl. Pt. 4, *id.* No such request was made in the instant case, and no request was made by petitioner's counsel for any examination related to petitioner's mental competency or criminal responsibility. In addition, in order for a jury to even consider petitioner's theory of the case that he saw Mr. White strike Mr. Nestor, the jury had to believe that petitioner was sober enough to be fully aware of and recall with specificity activity going on around him. Therefore, if counsel had requested such examination or requested an intoxication related instruction be given to the jury, those actions would have been wholly inconsistent with petitioner's assertion that he did not strike Mr. Nestor.

Other than criticizing the circuit court's reliance on petitioner's trial counsels' testimony regarding petitioner's understanding of the proceedings, petitioner does not set forth any portions of the pre-trial or trial process he did not understand. He also ignores his trial testimony that at the time of the crime he "had a pretty good beer buzz" but was not "staggering around drunk." Despite witness testimony that he had consumed acid, petitioner denies the same. For these reasons, we cannot find that the circuit court erred in concluding that petitioner's claims of mental incompetency at the time of the crime and the time of the trial are without merit.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:  April 29, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

4